IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN MASSIE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | )  Civil Action No. 06-1004 |
| | ) |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiffs have filed a Motion for Class Certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2). Plaintiffs are low-income families, and past and present members in Third East Hills Park, Inc. ("TEHP"), allegedly divested of their interests therein. They claim, <u>inter alia</u>, that Defendants wrongfully created the predicate for foreclosure on the property, and acted contrary to the Constitution and applicable regulations. Plaintiffs seek declaratory relief, injunctive relief, nominal security under Rule 65(c), and fees and costs. Defendants, the United States Department of Housing and Development and its Secretary (collectively, "HUD"), oppose class certification.

For the following reasons, Plaintiffs' Motion will be granted.

## I. FACTS

The parties have stipulated to several facts. The cooperative, Third East Hills Park, Inc., was formed in 1974. Under the bylaws, membership in the Cooperative is dependent on payment of a membership fee. In 1974, the membership fee was $350.00. The amount of the membership fee for new members varied over the years. On November 10, 2004, HUD issues a notice that it was initiating foreclosure proceedings, having declared default based on failed property inspections. On November 10, 2004, HUD issued a separate notice suspending/abating the project-based Section 8 subsidy payments for all units covered by the Housing Assistance Payments contract attached to the property. On November 17, 2004, HUD issued notice of displacement to all residents. In total, there are 52 putative class members. The parties have stipulated to a list of those members, in Document No. 70. Under Article 3, Section 7(b) of the bylaws, a Cooperative member may sell his or her membership, the Cooperative having a right of first refusal. In addition, if the Cooperative purchases a membership, the value of the membership is calculated according to a formula set forth in that provision of the bylaws. Between February 14, 2005, and September 1, 2005, sixteen Cooperative members received monies paid toward refunds from the Cooperative, as listed in Document no. 70. Nineteen households currently reside at the property.

Neither party has requested an evidentiary hearing or oral argument at this juncture, and such a hearing does not appear to be necessary.

## II. PLAINTIFFS' MOTION

### A. Timeliness - Local Rule 23(a)

I first address Defendants' argument that Plaintiffs' failure to timely file for certification under Local Rule 23.1 is fatal to their claims. Although it is within their discretion to do so, courts are reluctant to deny a motion for certification based solely on untimeliness pursuant to local rule. Ison v. Seven Seventeen HB Phila. Corp. No. 2, No. 99-1729, 2001 U.S. Dist. LEXIS 5470, at *9 (E.D. Pa. Mar. 7, 2001). This Complaint was filed, as a class action, in July of 2006. The parties actively engaged in litigation activities, until the Complaint was dismissed in its entirety in January of 2007. In March of 2007, upon Motion for Reconsideration, the case was reopened. A week later, Plaintiffs moved for class certification. Under the circumstances, neither Defendants nor class members have been prejudiced, and Plaintiffs have not been dilatory. In my discretion, I will not deny the Motion as untimely.

### B. CLASS CERTIFICATION

A class may be certified only if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Falcon, 457 U.S. at 161. In addition, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir. 2004). The burden of demonstrating that all of the requirements of class certification have been met rests on the party seeking to utilize the class action mechanism. Hohider v. United Parcel Service, No. 4-363, 2007

U.S. Dist. LEXIS 51274, at *18 (W.D. Pa. July 16, 2007).  Moreover, any uncertainties at the certification stage  are to be resolved in favor of certification.  <u>In re Microcrystalline Cellulose Antitrust Litig.</u>, 218 F.R.D. 79, 93 (E.D. Pa. 2003) (citing <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785 (3d Cir. 1985)).  The prerequisites of Rule 23(a) are to be liberally construed, in favor of class maintenance.  <u>Wallace v. Chicago Housing Auth.</u>, 224 F.R.D. 420, 423 (D. Ill. 2004).

Sometimes, class certification questions are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and courts may "delve beyond the pleadings to determine whether the requirements for class certification are satisfied."  <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297 (3d Cir. 2006).  Recently, my colleague on this Court adopted the following formulation of the relevant standards:

> (1) [A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4)  in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.....

<u>Hohider</u>, 2007 U.S. Dist. LEXIS 51274 (quoting <u>In re Initial Public Offering Sec. Litig.</u>, 471 F.3d 24 (2d Cir. 2006).

C.  <u>RULE 23(A)</u>

4

The first step in considering class certification is to determine whether the class meets the requirements of Fed. R. Civ. P. 23(a).  Hoffman Elec. Inc. v. Eerson Elec. Co., 754 F. Supp. 1070, 1075-78 (W.D. Pa. 1991).  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  The parties have stipulated that commonality is not in dispute, and I will therefore address only the remaining requirements.

1. Numerosity - Rule 23(a)(1)

First, I address whether the proposed class meets the numerosity requirement of Rule 23.

In order to satisfy that requirement, a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In that regard, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  Moreover, factors in determining the impracticality of joinder include judicial economy, the geographic dispersion of members of the class; the relative financial resources of the class members; and the claimants' ability to bring individual actions. Szczubelek v. Cendant Mortg. Corp., 215 F.R.D. 107, 116-17 (D.N.J. 2002).

Here, the parties have stipulated to fifty-two putative class members – i.e., fifty-two persons with fully-paid memberships in TEHP as of the Notice of Foreclosure on November 10, 2004. They have also stipulated that sixteen members received monies paid towards refunds from the Cooperative. Defendants assert that these people sold their memberships back to TEHP, and therefore forfeited their interests in TEHP. This, Defendants argue, reduces the class size to thirty-six. It is not undisputed, however, that the refunds paid constituted repurchase under the bylaws – i.e., that the refunds were done according to Article 3, Section 7(d) of the bylaws – such that it terminated membership rights.[1] Moreover, the parties have stipulated that the class consists of members as of November 10, 2004; the sixteen refunds to which Defendants point were paid, according to the parties' stipulation, beginning on February 14, 2005. Accordingly, even if membership rights were thus terminated, the termination would not have been effective in 2004.[2] It may prove that some of these persons were not damaged by Defendants' alleged actions. Whether Plaintiffs will prevail, however, is not the inquiry at this stage in

---

[1] Plaintiffs appear to acknowledge that perhaps two of the class members may have terminated membership rights, but not in a time frame that would support Defendants' argument. Exhibit A to Defendants' Supplemental Brief indicates that the membership account did not contain sufficient funds to repurchase memberships in accordance with the formula set forth in the bylaws. The Exhibit states, further, that the Board decided on a reimbursement plan. Again, however, I have no means of determining, as a matter of record, whether reimbursement under the Board's plan was sufficient to terminate the subject property interests.

[2] I note, too, that even if I were to find that the class numbered thirty-six, as Defendants assert, that would not necessarily bar certification. Classes of thirty-six have been certified, as that number "hovers near the number which most generally agree will satisfy the numerosity requirement." Town of New Castle v. Yonkers Contracting Co., 131 F.R.D. 38, 40 (S.D.N.Y. 1990).

the litigation.³ Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).

Additionally, considering other pertinent factors weighs in favor of finding numerosity satisfied. Plaintiffs seek primarily injunctive relief, which relaxes the numerosity requirement. See, e.g., In re OSB Antitrust Litig., No. 06-826, 2007 U.S. Dist. LEXIS 56617, *44 (E.D. Pa. Aug. 3, 2007). Moreover, it is at the crux of this issue that the Plaintiffs are all low-income individuals, which translates to few resources to pursue individual litigation.⁴ In addition, even accepting Defendants' unsupported assertion that the parties all live within the same immediate geographic area, such proximity alone does not defeat numerosity. See, e.g., McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 309 (D. Mass 2004). Finally, judicial economy is served by adjudicating these claims in a single action. Considering all of the factors, joinder is impracticable, and numerosity is satisfied.

2. Typicality - 23(a)(3)

Next, I address whether typicality is met. Plaintiffs assert that Defendants' alleged conduct applied to all putative class members, and therefore the legal theories of the proposed named representatives do not conflict with those of the

---

³Given the stipulation, it appears that there are no unnamed class members. Accordingly, Defendants' argument regarding lack of notice to such members, made in another context, is moot.

⁴Plaintiffs' statement regarding their income is without specific record support. The parties have stipulated to the involvement of Section 8 subsidy payments, which relate to low-income housing. United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. As an aside, the letter authored by Maryalice Bankston, to which Defendants point as evidence against typicality, notes that many residents of TEHP were without vehicles, and relied on public transportation.

class members.[5] Defendants, in turn, argue that several class members disagree with this litigation.

Typicality assesses whether the named plaintiff has incentives that are aligned with those of absent class members so as to assure that the absentees' interests will be fairly represented by the named plaintiff. Baby Neal, 43 F.3d 48, 57 (3d Cir. 1994). Typicality does not require that the members share identical claims. Id. at 58. Instead, "[c]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Id. Otherwise stated, "[i]f the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." Szczubelek, 215 F.R.D. at 118. Courts generally construe Rule 23(a)'s typicality requirement liberally; the Rule imposes a low threshold. Szczubelek, 215 F.R.D. at 118; Abbent v. Eastman Kodak Co., 90-3436, 1992 U.S. Dist. LEXIS 22582, at *26 (D.N.J. Aug. 28, 1992).

In this case, Plaintiffs challenge Defendants' conduct in causing and then reacting to the foreclosure relating to TEHP. That conduct affected each member in TEHP alike. Varying fact patterns – i.e., that some residents remain on site, some have relocated, or some are subject to eviction proceedings – does not affect the typicality of their claims of illegal conduct. Moreover, issues of liability do not differ

---

[5] At this time, the named Plaintiffs are Jean Massie, Shirley Sowell, Louise Brandon, Aline Ried, and Yugonda Akrie. It does not appear that the 2005 refunds made to the named representatives terminated their memberships as of the 2004 notice of foreclosure. Accordingly, in that regard, there appears to be no impediment to these Plaintiffs serving as class representatives.

8

between the named Plaintiffs and class members, and there is no suggestion of individual or unique defenses.[6] In other words, the claims arise from the same course of conduct and share the same legal theory; I see no significant risk of intra-class conflict.

Defendants, however, point to conflict between the named Plaintiffs and class members. They correctly observe that antagonism between the named plaintiff and class members may defeat adequacy of representation. In particular, Defendants point to a letter, signed by 33 members, opposing the efforts of named representatives to remove the relocation contractor Lord and Dominion from the TEHP property.[7]

This letter, however, does not create any conflict in fact. Defendants do not explain how the opposition to removing Lord and Dominion, or the acceptance of Section 8 vouchers and relocation, is inconsistent with this litigation. Contrary to Defendants' suggestion, there appears to be no conflict between those who have relocated, and were members at the time of the notice of foreclosure, and the named representatives in this litigation. If Plaintiffs were to prevail in this litigation, all members of the class would gain the same opportunities -- perhaps, for example, for additional assistance. There is no suggestion that success in court would negatively impact any class member.

---

[6] The potential of unique defense asserted by Yevorn Gaskins has been rendered irrelevant by her withdrawal as a named Plaintiff.

[7] As Plaintiffs observe, the parties have not stipulated to the use or authenticity of the letter, and Plaintiffs point out certain potential flaws in its use. I will consider the letter for present limited purposes.

9

Defendants also argue that the letter suggests a personal antagonism directed towards the named Plaintiffs. The letter certainly reflects strong disagreement with unnamed individuals' decision to fight to save the cooperative; it simply does not, however, demonstrate a personal or any other profoundly destructive rift between putative class members and representatives. To the extent that the letter indicates a conflict, it is not one that would defeat typicality. "Differences which do not raise questions as to the very legitimacy of the class action process, however, but merely reflect variances in view as to the proper outcome of a suit, do not provide reason for a court to refuse to hear a class suit. Such differences can be taken into account, and absentee interests thus fairly protected, in the course of the class action itself." Gill v. Monroe County Dep't of Social Services, 95 F.R.D. 518, 520 (D.N.Y. 1982).

3. Adequacy of Representation - Rule 23(a)(4)

In assessing adequacy of representation, I am to look to "'whether the named plaintiffs' interests are sufficiently aligned with the absentees', and...the qualifications of the counsel to represent the class." In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303 (3d Cir. 2005). As discussed above, the named Plaintiffs' interests are sufficiently aligned with the remaining class members. Moreover, I accept that counsel of record, the Community Justice Project, are experienced in pertinent litigation. I note, too, that they have vigorously and appropriately pursued this litigation. There are no allegations that counsel is unable to represent the class, or has any interests that run

10

counter to those of the class.  I find adequacy of representation satisfied.

B. <u>CERTIFICATION UNDER RULE 23(B)(2)</u>

The class must also comply with Rule 23(b)(2) in order to obtain certification.  Under that Rule, a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  A 23(b)(2) class "serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." <u>Baby Neal</u>, 43 F.3d at 58-59.  This Rule is "almost automatically satisfied in actions primarily seeking injunctive relief." <u>Id.</u> at 58.  As discussed <u>supra</u>, I reject Defendants' argument that the interests of the class representatives differ materially from those of the proposed class members.  Further, I cannot conclude that, because Plaintiffs sought money in off-the-record compromise negotiations, money is the primary relief sought.  The Complaint itself seeks primarily injunctive and declaratory relief.  As the substance of the Complaint proscribes Plaintiffs' entitlement in this action, I will deem its <u>ad damnum</u> clause to reflect the aim of this litigation.  Accordingly, I find this an appropriate Rule 23(b) action.

CONCLUSION

In sum, after the required rigorous analysis, Plaintiffs have met their burdens regarding every subpart of Rule 23(a), and have demonstrated a class action maintainable under Rule 23(b).  Upon consideration of Rule 23(g), I find

that current counsel is appropriate. Plaintiffs' Motion will be granted, and an appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER OF COURT

AND NOW, this **1st** day of October, 2007, after careful consideration and for the reasons set forth in the accompanying Opinion, it is Ordered that the Plaintiffs' Motion for Class Certification (Docket No. [43]) GRANTED, as stated herein. All of the requirements of Fed.R. Civ. P. 23(a) are met, and the class is certified to proceed under Fed. R. Civ. P. 23(b)(2). The class shall consist of residents with fully-paid memberships as of the notice of foreclosure on November 10, 2004, as agreed by the parties in Document No. 70. Present counsel, the Community Justice Project, shall continue to serve as class counsel. The class may proceed on its claims relating to violation of 109 P.L. 115, § 311; 24 C.F.R. § 290; and procedural due process.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge